UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-271-RGJ

TYROME LOTT                                                    PLAINTIFF

v.

LOUISVILLE METRO GOVERNMENT, et al.                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Tyrome Lott alleges violations of state law and seeks relief under 42 U.S.C. § 1983 for violations of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution against Louisville-Jefferson County Metro Government ("Metro Government"), Steve Conrad ("Conrad"), individually and in his official capacity as Chief of Louisville Metro Police Department, and Vanessa Burns ("Burns"), individually and in her official capacity as Secretary of Public Works and Assets for Metro Government.   [DE 1-3 at 17-24].   Defendants move for summary judgment [DE 21] and to strike Plaintiff's class action allegations, definition, and claims. [DE 23].  Plaintiff moves for class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3).  [DE 26-1 at 801].  Briefing is complete, and the motions are ripe [DE 22; DE 24; DE 25; DE 27; DE 28; DE 29].  For the reasons below, Defendants' Motion for Summary Judgment [DE 21] is **DENIED**,  Defendants' Motion to Strike [DE 23] is **DENIED**, and Plaintiff's Motion for Class Certification [DE 26] is **GRANTED**.

## I.      BACKGROUND

In May 2005, Louisville Metro Council passed Louisville Metro Ordinance 72.062 ("Ordinance").  [DE 22 at 338].  The Ordinance provides that "Metro Government tow lot shall

1

charge $10 as a handling charge on all passenger cars, pick-up trucks, vans and motorcycles plus a storage charge of $10 for each of the first seven days or fraction thereof the vehicle is retained in storage and a charge of $5.00 per day for each additional day the vehicle remains in storage." [DE 1-3 at 26]. The Ordinance also provides that "[t]he Cabinet Secretary for Public Works and Services shall *set all towing charges in writing*. The fees set forth in this section are the initial fees and hereinafter the Cabinet Secretary for Public Works and Services may raise the fees no more than 10% each year." *Id.* (emphasis added)

Plaintiff alleges that on "February 2, 2008, and with no written record of approval of the increase, the Secretary . . . raised the storage fee to $11 per day. This action eliminated the bifurcated fee schedule set forth in the Ordinance which charged $10 per day for the first seven days, and $5.00 for each day thereafter." [DE 22 at 338 (internal citation and formatting omitted)]. Plaintiff asserts that "[w]hen the Secretary took this action, the maximum increase (10% per year) for storage of a vehicle after seven days would have been $5.50 per day. It would not have been $11 per day for every day of impoundment." *Id.* Defendants dispute Plaintiff's claim that there is "no written record of approval" for the increase of storage fees in 2008. [DE 24 at 662-63].

The Secretary increased the storage fee to $12 in December 2009 and $13 in August 2012. [DE 22 at 338]. Conrad recommended the 2012 increase based on "what had been before," but did not "go back and look at what anybody had done in 2008 or 2009." [DE 23-12 at 652]. Defendants do not dispute that since 2008 they have been overcharging individuals for vehicles stored more than seven days. [DE 24 at 665 ("The excess charges were simply an unintended mistake by the police in relying on the daily storage rate per the approved 2012 fee Memorandum, a copy which is attached to the Complaint. The predicate mistake began with the 2008 increase and formed the basis for errant calculations thereafter of rates for storage and excess of seven

2

days")].

On September 9, 2018, police officers towed Plaintiff's car to the Metro Government tow lot.  [DE 22 at 339].  Police officers alleged that they towed Plaintiff's car because it was illegally parked and had a marijuana joint[1] in plain view inside it. [DE 28-1 at 881].  Forty-four days later, Plaintiff paid the tow lot approximately $700 to retrieve his car.  [DE 22 at 340].  The parties dispute whether Plaintiff knew that Metro Government had overcharged him in violation of the Ordinance when he paid the tow lot.  [DE 22 at 359; DE 24 at 675].

A few days *after* Plaintiff retrieved his car, Defendants sent him a certified letter informing him that:

> WITHIN TEN (10) DAYS FROM THE DATE OF THIS NOTICE, THE REGISTERED OWNER AND/OR LIENHOLDERS OF RECORD, IF ANY, MAY REQUEST IN WRITING A HEARING PURSUANT TO KRS 82.625 TO CONTEST THE VALIDITY OF THE IMPOUNDMENT. IF NO HEARING IS REQUESTED, THE VEHICLE SHALL BE DEEMED ABANDONED UNLESS THE CHARGES THEREON ARE PAID WITHIN FORTY-FIVE (45) DAYS OF NOTICE. THE REQUEST FOR A HEARING MUST BE MADE IN WRITING TO THE REPUBLIC PARKING, 430 SOUTH THIRD STREET, LOUISVILLE, KY 40202.

[DE 21-1 at 135 (capitalization in original)].

In March 2019, Plaintiff sued in Kentucky state court  [DE 1-3].  Defendants removed to this Court.  [DE 1-2].  Plaintiff, individually and on behalf of the putative class, asserts violations of 42 U.S.C. § 1983 (Count I), unjust enrichment (Count II), negligence per se (Count III)[2], negligent misrepresentation (Count IV), and declaratory and injunctive relief (Count V).  [DE 1-3 at 17-23].  Plaintiff alleges that "Defendant Louisville Metro Government had and has an unconstitutional practice, custom, policy, and pattern of using its agents and employees to assess

---

[1] The possession of marijuana charge against Plaintiff was later dismissed.  [DE 22 at 339].

[2] Plaintiff concedes that he cannot maintain a negligence per se claim.  [DE 22 at 360]. As a result, the Court dismisses his negligence per se claim.

3

and collect from the Plaintiff and members of the Class storage and impoundment fees in excess of the amounts authorized by Louisville Metro Ordinance 72.062." *Id.* at 18.  Plaintiff requests class certification for:

> [A]ll persons with vehicles registered to them whose vehicles were assessed in excess of the maximum storage fee charge of $10 for each of the first seven days a vehicle is in storage, plus a $5.00 fee per day for each additional day thereafter that a vehicle remains in storage as authorized by Louisville Metro Ordinance 72.062, and those who had their automobile auctioned, since on or about February 2, 2008.

*Id.* at 14-15.

## II.   DISCUSSION

### A.   Motion for Summary Judgment[3]

#### 1. Standard

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party must produce specific facts showing a material issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  "Factual

---

[3] The Court has discretion to decide the order in which to consider the parties' motions and exercises that discretion to consider Defendants' motion for summary judgment before it considers Plaintiff's motion for class certification. *See Bernal v. Trueblue, Inc.*, 730 F. Supp. 2d 736, 738 (W.D. Mich. 2010) ("[A] court may consider a motion for summary judgment prior to considering a motion for collective action certification"); *Miami Univ. Wrestling Club v. Miami Univ.*, 302 F.3d 608, 616 (6th Cir. 2002) ("We have consistently held that a district court is not required to rule on a motion for class certification before ruling on the merits of the case").

differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion." *Bell v. City of E. Cleveland*, 125 F.3d 855 (6th Cir. 1997) (citing *Liberty Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations but must view the evidence and draw all reasonable inferences in a light most favorable to the non-moving party. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). The non-moving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must show a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. Pro. 56(c)(1)(A)–(B); *see also Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Liberty Lobby*, 477 U.S. at 252.

2.   Statute of Limitations

Defendants argue that Plaintiff's § 1983 class action claim is barred by the relevant one-year statute of limitations: "This action was commenced on March 15, 2019 within six months of the date Lott's car was towed of September 5, 2018, yet Lott seeks relief on behalf of a putative class for those he alleges to be 'similarly situated persons' who were assessed unauthorized fees dating back to October 2, 2008." [DE 21-1 at 141]. Plaintiff disagrees. [DE 22 at 341-55].

Section 1983 does not provide its own statute of limitations, so federal courts "borrow" the limitations period for personal injury actions from the state where the events occurred. *Owens v.*

*Okure*, 488 U.S. 235, 249-50 (1989).  For constitutional torts committed in Kentucky, the one-year limitation period under KRS § 413.140(1)(a) for bringing general personal injury actions applies. *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 181-82 (6th Cir. 1990).  Federal law, on the other hand, governs when the statute of limitations for a § 1983 claim begins to run.  *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).  And the Sixth Circuit has held that the "statute of limitations begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred."  *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (citations and internal quotation marks omitted).  This inquiry is objective and the court looks "to what event should have alerted the typical lay person to protect his or her rights."  *Hughes v. Vanderbilt*, 215 F.3d 543, 548 (6th Cir.2000); *J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.,* 76 F.3d 1245, 1254 (1st Cir.1996)  (noting that the objective standard is the appropriate test for determining a "date of discovery"); *Volk v. D.A. Davidson & Co.,* 816 F.2d 1406, 1417 (9th Cir.1987) ("[T]he extent to which a plaintiff used reasonable diligence is tested by an objective standard").  This is known as the "discovery rule."  *See Mounts v. Grand Trunk W. R.R.,* 198 F.3d 578, 582 n. 3 (6th Cir.2000)  (noting that the discovery rule has been applied to claims under § 1983); *United States v. Kubrick,* 444 U.S. 111, 123-24 (1979) (finding that plaintiff's claim accrued when he knew of the injury and its cause); *Hicks v. Hines,* 826 F.2d 1543, 1544 (6th Cir.1987) (explaining that courts apply the "discovery" rule to tort causes of action "if the injured person sustains an injury which cannot itself reasonably be discovered, or the cause of which cannot reasonably be discovered, until some time following the tortious event and the running of the statute of limitations").

Defendants assert that Plaintiff, with Mr. Alexander's assistance, discovered that Defendants were charging storage fees in excess of those authorized by the Ordinance.  [DE 24 at

666 ("The statute of limitations for the alleged 1983 claim commenced to run when Lott knew or had reason to know of his being overcharged and this determination was easily made by Lott and his legal counsel, Mr. Alexander, by looking at the subject ordinance and determining by looking at Metro rate memorandums in 2005, 2009 and 2012").   But, Mr. Alexander is not a "typical lay person."   Rather, he is an attorney who discovered the harm by identifying and parsing the Ordinance and submitting several open records requests to determine when the fees had been increased.  [DE 21-1 at 142-43].  Until Plaintiff sued,  Defendants apparently did not realize that they had been overcharging individuals for more than a decade.  [DE 24 at 665].

Defendants do not dispute that Plaintiff timely filed his individual § 1983 claim.  [DE 21-1 at 141].  Defendants, however, assert that some class members' § 1983 claims are time-barred. *Id.* at 143. Yet, when viewed through an objective lens, it is unclear how these putative class members should have known that "the act providing the basis of his or her injury [had] occurred" (*i.e.*, that Defendants were overcharging them) when Defendants themselves did not realize it until this lawsuit was filed.  Likewise, it is unclear how these putative class members could have determined that they were overcharged when the existence of the 2008 official memorandum is in dispute,  [DE 22 at 338; DE 24 at 662; DE 29 at 1052], and when—even it if did previously exist— it was "discarded or lost" at some indeterminate time.  [DE 24-1 at 681]; *see Jardin De Las Catalinas Ltd. P'ship v. Joyner,* 766 F.3d 127, 134 (1st Cir. 2014)  ("The discovery rule is meant to aid plaintiffs who, for reasons beyond their control, could not have promptly discovered the facts that form the foundation of their claims")  (citing *Kubrick,* 444 U.S. 122).  The Court finds that there is a genuine issue of material fact about when the clock began to run on the putative class members' § 1983 claims.  As a result, the Court cannot find at this time that the putative class members' § 1983 claims are barred by the relevant one-year statute of limitations.

3. Exhaustion of administrative remedies

Defendants contend that "Lott received notice that he could request a hearing in compliance with KRS 82.625 but he failed to do so and instead he paid the towing and storage charges voluntarily. Lott ignored the statutory administrative processes for review of his alleged injury . . . Lott's failure to properly exhaust available administrative remedies precludes him from later seeking judicial relief in this case, individually or on behalf of a putative class." [DE 21-1 at 145-47]. Plaintiff counters that under federal law he need not exhaust his § 1983 claim and that under Kentucky law "exhaustion of administrative remedies is not required when an agency acts in excess of its powers." [DE 22 at 356-357].

"[A]s a matter of federal law, exhaustion of administrative remedies is simply not required in non-prisoner actions under 42 U.S.C. § 1983. In other words, the exhaustion of administrative remedies is not a jurisdictional prerequisite for non-prisoner section 1983 actions as it is with some other types of federal-court actions." *Michigan Chamber of Com. v. Land*, 725 F. Supp. 2d 665, 678 (W.D. Mich. 2010); *see Porter v. Nussle*, 534 U.S. 516, 523 (2002) ("Ordinarily, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court"); *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982) ("Based on the legislative histories of both § 1983 and § 1997e, we conclude that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983"). Defendants' cited cases, [DE 21-1 at 145-46], are inapt because plaintiffs in those § 1983 cases were prisoners subject to the exhaustion requirements of the Prison Litigation Reform Act ("PLRA"). Because Plaintiff is not a prisoner, he was not required to exhaust administrative remedies before filing his § 1983 action.

Under Kentucky law, "[a]s a general rule, exhaustion of administrative remedies is a jurisdictional prerequisite to seeking judicial relief." *Com. v. DLX, Inc.*, 42 S.W.3d 624, 625 (Ky. 2001) (holding that a party must exhaust administrative remedies before seeking judicial review of an as-applied constitutional challenge). "A party may file a petition for judicial review only after the party has exhausted all administrative remedies available within the agency whose action is being challenged, and within any other agency authorized to exercise administrative review." KRS § 13B.140(2). "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may: (1) function efficiently and have an opportunity to correct its own errors; (2) afford the parties and the courts the benefit of its experience and expertise without the threat of litigious interruption; and (3) compile a record which is adequate for judicial review." *Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cabinet*, 133 S.W.3d 456, 471 (Ky. 2004) (quoting 2 AM. JUR. 2D *Administrative Law* § 505 (1994)). "With increasing case loads and demands upon the courts, it is important to note that '[t]he rule requiring exhaustion also promotes judicial economy by resolving issues within the agency, eliminating the unnecessary intervention of courts.'" *Id.* KRS § 82.625(4), the administrative exhaustion provision at issue, provides:

> The owner of a motor vehicle which has been impounded pursuant to this section or other person entitled to possession, may challenge the validity of such impoundment and request in writing a hearing before the hearing board. The hearing shall be conducted within ten (10) business days of the date of the request, unless the owner or other person entitled to possession waives the limitation or the local government shows good cause for such delay. The local government shall retain possession of the vehicle pending the hearing, unless the owner or other person claiming right of possession posts a bond in an amount equal to the fines and fees accrued as of the date of the hearing request, or seventy-five dollars ($75) whichever is less. If the owner or person claiming possession of the vehicle is unable to pay the amount of the bond, the hearing shall be held within seventy-two (72) hours of the date the request for hearing is received, unless such person requests or agrees to a continuance.

Citing federal precedent interpreting the administrative exhaustion requirements of the PLRA, Defendants argue that "[e]xhaustion is required even if it is believed the administrative authority has no relief [sic] to grant the requested relief." [DE 24 at 673]. The administrative hearing discussed in KRS § 82.625(4) is limited to whether Plaintiff's vehicle was validly impounded, which Plaintiff is not contesting. *See Harrison's Sanitarium, Inc. v. Com., Dep't of Health*, 417 S.W.2d 137, 138 (Ky. 1967) ("[A] party may have direct judicial relief without exhaustion of administrative remedies when there are no disputed factual questions to be resolved and the issue is confined to the validity or applicability of a statute or ordinance"). And statements by federal courts about PLRA exhaustion do not particularly help the Court understand the state-law exhaustion requirements at issue. As a result, the Court cannot find as a matter of law that Plaintiff waived his right under Kentucky law to later challenge Defendants' allegedly illegal storage fee increases by failing to request an administrative hearing on whether his car was validly impounded.[4] Indeed, it is unclear based on the plain language of KRS § 82.625 if the administrative body even has the authority to determine whether the storage fees had been illegally increased in violation of the Ordinance. *See* KRS § 82.625(5)(c) ("At the hearing, after consideration of the evidence, the board shall determine whether the impoundment was valid and reasonable"). Requiring Plaintiff to have an administrative hearing on an issue he is not contesting does not further "judicial economy by resolving issues within the agency, eliminating the

---

[4] Although not argued by Plaintiff, Defendants' failure to send timely notice of his right of administrative appeal may bar their ability to raise this defense. *See, e.g.*, *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 324 (2d Cir. 2004) ("Defendants who give inadequate notice of the right to administratively appeal a denial of benefits are thus precluded from refusing to accept an untimely administrative appeal, or from asserting failure to exhaust administrative remedies as a defense").

unnecessary intervention of courts.'"  Nor does it further "judicial economy" for Plaintiff to present the issue of Defendants' illegal storage fee increases to an administrative body that does not authority to "resolve" it.  *See OVWD, Inc. v. Commonwealth*, No. 2015-CA-000754-MR, 2017 WL 1102990, at *3 (Ky. Ct. App. Mar. 24, 2017)  ("Like virtually every rule of law, however, exceptions to the exhaustion doctrine exist.  The exceptions arose, generally, to prevent parties from needlessly traversing the administrative process when doing so would amount to an exercise in futility").

4. <u>Voluntary payment</u>

Defendants argue that "Lott's claims are also barred by the voluntary payments doctrine . . . Lott cannot otherwise recover these alleged overcharges or seeking additional claim and relief, as he waived, forfeited or is estopped from making such claims."  [DE 21-1 at 147-50].  Plaintiff disagrees: "Lott was told he had to pay $13 per day storage fees to get his car out of impoundment; otherwise his car would be auctioned. Faced with this immediate and urgent necessity, and without knowledge of all the facts after exercising all due diligence to obtain crucial and vital information, his payment to obtain his car should not be considered voluntary."  [DE 22 at 359].

"Where one pays an illegal demand with full knowledge of all the facts which render the demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention or to prevent an immediate seizure of his person or property, the payment is voluntary."  *City of Morganfield v. Wathen*, 202 Ky. 641, 261 S.W. 12, 14 (1924).

Plaintiff asserts that his "payment of the fees and charges to get his car out of impoundment was not made with full knowledge of the facts and Defendants' unlawful assessment of fines and fees, and therefore, was not voluntarily paid."  [DE 22 at 359].  Plaintiff also asserts that "he exercised due diligence in attempting to discover and obtain full knowledge of the facts to

11

determine whether there was, in fact, a cause of action.  Only with litigation has it been proven

that there is no 2008 written approval of the Secretary for the fee increases." *Id.*  Defendants, on

the other hand, contend that Plaintiff paid his fees with "full knowledge" of the facts.  [DE 24 at

674].  Defendants attached Catina Rivera's affidavit to their reply.  In her affidavit, Ms. Rivera

asserts:

> . . .
>
> 2. In January 2008 and while I was the Vehicle Impoundment Manager for Metro Department of Public Works & Assets, I circulated a draft Memorandum to Ted Pullen, who was then the Director for Metro Public Works & Assets for a rate increase in towing, impoundment and storage fees for vehicles impounded at the Lot.  A copy of my draft rate Memorandum sent to Ted Pullen along with an email to Greg Hicks, Department of Public Works and Assets is attached hereto as Exhibit A and it includes the proposed rate increases as set forth in this Memorandum.
>
> 3. The draft Memorandum on rate increases, a copy of which is attached as Exhibit A hereto, was considered by Director Pullen.  Thereafter, in 2008, I personally know that Ted Pullen, as Director of Metro Department of Public Works & Assets, approved a rate increase in fees for towing, impoundment, and storage fees during the time that I was the Vehicle Impoundment Manager for the Department of Public Works & Assets for Louisville/Jefferson County Metro Government. This rate increase was officially approved by Mr. Pullen in his capacity as Director of Department of Public Works & Assets and certainly was thought to be a proper authorized rate increase at all times regarding impoundment and storage fees. The rate increase was enacted in good faith considering the appropriate statutes and Metro Ordinance authorizing rate increases.
>
> 4. Before the final Memorandum was approved by Director Pullen in February, 2008, additional drafts and other related documents to this Memorandum of January-February 2018 were prepared and reviewed with respect to the rate increases. Copies of some of these documents are attached as Exhibits B, C, and D. These documents and especially Exhibit D, a copy of my Memorandum substantiate that on February 2, 2008, Director Pullen approved a rate increase as noted thereon.  The actual rate increase was approved February 2, 2008 as noted in Exhibit D.  Then in December 2009, another rate increase for impoundment, towing and storage fees was approved by Ted Pullen, Director of Department of Public Works & Assets. During the time that I continued to be Vehicle Impoundment Lot Manager for Metro Government, a copy of the 2008 executed and approved rate increase Memorandums was kept by the Department of Public Works & Assets.

5. After July 6, 2009, I continued to work for Metro Government but not as the Lot Impoundment Manager. I have read a copy of the Complaint filed in this action with certain documents attached. I know there is a copy of an approved 2009 rate increase attached to the Complaint which also references the February, 2008 rate increases and shows the amount of increases which is the same as Director Pullen approved in 2008 except the approved towing charge was lowered from $93.50 to $93.00 as set forth also in Exhibit D. hereto. In 2012, the Louisville Metro Police Department took over control of the Metro Impoundment Lot from Department of Public Works & Assets. It is my understanding that in 2018 and 2019, a copy of the final approved 2008 Memorandum on Impoundment Fee Increase could not be found by the Department of Public Works & Assets after Plaintiffs requested a copy of this document. I have read the Complaint in this case. Recently in searching for a copy of the February 2008 Memorandum approved by Ted Pullen, I located a copy of Exhibit D and the related documents attached as Exhibits A, B, C, and D.

6. Over 10 years had elapsed after the 2008 rate increase and the time that Tyrome Lott's vehicle was towed by Metro Police on September 9, 2018. After the December 2009 rate increase, another rate increase went into place in or about October, 2012. I know that the February 2008 Memorandum showing Impoundment Fee Increases was properly approved by Director Ted Pullen, Department of Public Works & Assets. Evidently, this 2008 Memorandum approving Impoundment Fee Increases that was signed by Director Pullen must have been discarded or lost some time after Louisville Metro Police Department took over control of the Metro Impoundment Lot in 2012.

[DE 24-1 at 679-81].

Ms. Rivera's affidavit provides detailed information about the history of the 2008 memorandum and the later fee increases. *Id.* Plaintiff asserts that he did not know all this information when he paid his storage fees. [DE 29 at 1051-52]. As a result, there is a genuine issue of material fact about whether Plaintiff had "full knowledge of all the facts which render the demand illegal" when he paid his fees. *See Helton v. Am. Gen. Life Ins. Co.*, 946 F. Supp. 2d 695, 713–14 (W.D. Ky. 2013) ("As Plaintiffs have alleged that they did not have full knowledge of all the facts of the premium financing arrangement, there are material issues of fact as to whether James Henry voluntarily paid the first premium of $175,000. Therefore, summary judgment as to Plaintiff James Henry's claims is not appropriate"); *Arlington Video Prods., Inc. v. Fifth Third*

*Bancorp*, 569 F. App'x 379, 389 (6th Cir. 2014) (finding genuine issue of material fact about whether plaintiff had "full knowledge" where the "Bank did not disclose to Arlington all of the facts relating to the deposit adjustment fee or the increase in the returned item fee before automatically withdrawing those fees from Arlington's account and listing unexplained 'service charges' on the monthly bank statements. Newman had to contact the Bank to question the composition and applicability of the 'service charges'").

5. Unclean hands

Defendants argue that the doctrine of unclean hands applies to bar Plaintiff's claims: "Whereas in this case, Lott only was unable to get his vehicle out of impoundment in the first seven days only because he did not have the required vehicle insurance and proper registration, the court should apply the equitable defense of unclean hands to disallow Lott's claims." [DE 21-1 at 153]. Plaintiff disagrees: "Discovery responses show that thousands of Louisville citizens have been and are being unlawfully overcharged for impoundment of what may be their only asset. Defendants ask the Court to ignore the fact that Lott's personal financial hardship delayed him from being able to pay their unlawful charges for 44 days, just barely avoiding auction of his car." [DE 22 at 360-61].

"The unclean hands doctrine is a rule of equity and, therefore, should not be applied if to do so reaches an inequitable result. When the plaintiff has engaged in conduct less offensive than that of the defendant, the rule will not preclude the plaintiff's recovery." *Suter v. Mazyck*, 226 S.W.3d 837, 843 (Ky. Ct. App. 2007). Here, there are issues of material fact about the parties' relative "conduct" and therefore summary judgment is not appropriate. *Id.* at 844 (finding summary judgment improper where there were "material issues of fact as to the extent of the Suters' misconduct and that of the appellees").

14

**B.      Motion for Class Certification[5]**

1.      Standard

The Court has broad discretion in deciding whether to grant class certification. *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). That said, "it must exercise that discretion within the framework of Rule 23." *Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002). Under Rule 23 the moving party bears the burden of proving that the proposed class both satisfies Rule 23(a)'s requirements and fits into one of Rule 23(b)'s three subdivisions. *Coleman*, 296 F.3d at 446; Fed. R. Civ. P. 23(b); *see also Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 (6th Cir. 2004). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23(a) has four requirements, which all must be satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The Court's Rule 23 analysis must be "rigorous." *Dukes*, 564 U.S. at 350-51. "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."

---

[5] Defendants' arguments in its motion to strike [DE 23] substantially overlap with its arguments in its response [DE 28] to Plaintiff's motion for class certification. As a result, the Court will consider Defendants' arguments for both in this section of the Opinion. *See Fishon v. Mars Petcare US, Inc.*, No. 3:19-CV-00816, 2020 WL 6826733, at *13 (M.D. Tenn. Nov. 20, 2020) ("A motion to strike class allegations under Rule 12(f) may be treated as a motion to deny class certification under Rule 23") (citing *Bearden v. Honeywell Int'l, Inc.*, 720 F. Supp. 2d 932, 942 (M.D. Tenn. 2010)).

*Id.* And "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160, (1982). That said, "the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.)*, 678 F.3d 409, 417-18 (6th Cir. 2012) (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012)). Thus, the court's Rule 23 analysis must not include consideration of whether plaintiffs will ultimately prevail on the merits of their claims. *Id.* at 418 (citing *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004)).

2.   Requirements of Fed. R. Civ. P. 23(a)

a. *Class definition*

"Although not specifically mentioned in [Rule 23], the definition of the class is an essential prerequisite to maintaining a class action." *Adams v. Fed. Materials Co.,* 2006 WL 3772065 at *3 (W.D.Ky.2006) (quoting *Gevedon v. Purdue Pharma,* 212 F.R.D. 333, 335 (E.D.Ky.2002)); *see also Bentley v. Honeywell Int'l, Inc.,* 223 F.R.D. 471, 477 (S.D. Ohio 2004) ("Before delving into the 'rigorous analysis' required by Rule 23, a court first should consider whether a precisely defined class exists and whether the named plaintiffs are members of the proposed class"). This includes the obligation to create a new definition *sua sponte* if the parties' own proposals are not adequate or accurate. *See Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("[C]ourts must be vigilant to ensure that a certified class is properly constituted. More to the point, district courts have broad discretion to modify class definitions"); *see, e.g. Schorsch v. Hewlett–Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005) ("Litigants and judges regularly modify class definitions"); *In re Monumental Life Ins. Co.,* 365 F.3d 408, 414 (5th Cir. 2004) ("District courts are permitted to limit or modify class definitions to provide the necessary

precision."). At a minimum, the description must be "sufficiently definite that it is administratively feasible for the court to determine whether a particular individual is a member." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1760, at 120–21 (2d ed.1986).

Defendants contend that the proposed class definition creates an impermissible "fail-safe class." [DE 23-1 at 540]. Citing *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012),[6] Plaintiff argues that the proposed definition does not create a "fail-safe class" because the class can be determined based on objective criteria, such as "the fees charged and collected from the owner of the car released from impoundment" and "the length of time a vehicle was impounded." [DE 25 at 753].

In *Young*, defendants argued, among other things, that plaintiffs' proposed class definition, which included individuals "who were charged local government taxes on their payment of premiums which were either not owed, or were at rates higher than permitted," created an impermissible fail-safe class. *Young*, 693 F.3d at 536. Affirming the district court's grant of class certification, the Sixth Circuit reasoned that the class definition did not create an impermissible fail-safe class because membership in the class could be determined without consideration of the merits. *Id.* at 538. The Sixth Court noted that "Plaintiffs' classes [were] defined by classic categories of objective criteria" and that class membership based on the proposed definition required "determining the location of the insured risk/property; the geographical boundaries for the relevant local government; the local tax for a particular taxing district within whose boundaries

---

[6] In their reply [DE 27], Defendants do not attempt to distinguish *Young*.

the insured property is located; and the local tax charged and collected from the policyholder." *Id.* at 539.

Plaintiff proposes a class of:

[A]ll persons with vehicles registered to them whose vehicles were assessed in excess of the maximum storage fee charge of $10 for each of the first seven days a vehicle is in storage, plus a $5.00 fee per day for each additional day thereafter that a vehicle remains in storage as authorized by Louisville Metro Ordinance 72.062, and those who had their automobile auctioned, since on or about February 2, 2008.

Although not argued by Defendants, the words "maximum" and "authorized" in the class definition have the potential to create a fail-safe class because whether Defendants' exceeded the "maximum" amount "authorized" under the Ordinance "would require the court to resolve merits issues." *Young*, 693 F.3d at 538 ("[A] fail-safe" class is one that includes only those who are entitled to relief"). Because the Court has "broad discretion" to amend the class definition, it will exercise that discretion to remove the words "the maximum storage fee charge of" and "as authorized by Louisville Metro Ordinance 72.062" from the class definition. *See Powers*, 501 F.3d at 619.

The Court will also remove "and who had their automobile auctioned" because it relates to and specifies a class members' potential damages, which can be determined on an individualized basis and need not be included in the class definition. Because Plaintiff's car was not auctioned, Defendants argue *infra* that he is an improper class representative. [DE 28 at 843]. Removing "and who had their automobile auctioned" from the class definition nullifies that argument. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) ("Defining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis").

18

The revised class definition does not create an impermissible fail-safe class because membership can be determined based on objective criteria and without considering the merits. *See Moore's Federal Practice* § 23.21(3) ("For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria. In some circumstances, a reference to damages or injuries caused by particular wrongful actions taken by the defendants will be sufficiently objective criterion for proper inclusion in a class definition"). Defendants undercut their fail-safe class argument by admitting that "[c]learly not every putative class member was overcharged storage fees." [DE 28 at 834]. If not every "putative class member was overcharged storage fees," then the proposed class does not only include those who are entitled to relief. *Young*, 693 F.3d at 538 ("Defendants' other argument—that they are not ultimately liable for many of the class members, even if they were incorrectly charged—proves the point. This is not a proscribed fail-safe class"). The finder of fact determines whether Defendants' unlawfully charged class members excess storage fees in violation of the Ordinance. Membership in the class is predicated not on Defendants' liability but on whether the putative class members' vehicles were impounded and they were charged fees above a specified amount. *Id.* at 539 ("Although Defendants describe these facts as disputed, it is clear from their briefs and arguments below that what they dispute is whether they are ultimately liable to a policyholder for an incorrect overcharge, not whether the policyholder was, in fact, so charged"); *Kinder v. Nw. Bank,* 278 F.R.D. 176, 183 (W.D. Mich. 2011) (finding class definition sufficiently definite when based on objective criteria including whether plaintiffs used one of the defendant's ATMs at one of the specified locations during the relevant period and whether they were charged a fee).

    *b. Numerosity*

19

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). "However, sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (citing 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3:5, at 243-45 (4th ed. 2002)). In making this determination, the Court may consider "reasonable inferences drawn from facts before it." *Senter v. General Motors Corp.,* 532 F.2d 511, 523 (6th Cir.1976). But the Court may not rely on speculation or the conclusory allegations of the proposed representatives. Instead, Plaintiffs must "show some evidence of or reasonably estimate the number of class members." *Brashear v. Perry Cty., Ky*., No. CIV.A. 6:06-143-DCR, 2007 WL 1434876, at *4 (E.D. Ky. May 14, 2007) (internal quotation marks and citation omitted). "[I]t generally is accepted that a class of 40 or more members is sufficient to satisfy the numerosity requirement." *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 622 (E.D. Mich. 2020) (quoting *Davidson v. Henkel*, 302 F.R.D. 427, 436 (E.D. Mich. 2014) (internal quotation marks omitted).

Plaintiff argues that the proposed class satisfies the numerosity requirement: "The total number of potential class members is not known with particularity at this time because the number is increasing each day as a result of the continued violations by Defendant Louisville Metro Government. According to a recent audit report, approximately eight to ten thousand vehicles are towed and impounded at the Defendants' Tow Lot each year." [DE 26-1 at 793]. Defendants do not respond to this argument.

20

Although Plaintiff has not provided the Court with the exact number of putative class members, the sheer size of the potential class satisfies the numerosity requirement. And, at the very least, the Court finds that Plaintiff has demonstrated that the class will consist of at least 40 members. *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) ("When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the numbers alone"); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013) ("Whirlpool shipped thousands of Duets to Ohio for retail sale. Evidence of these shipments to retailers is sufficient to show numerosity of a class consisting of all Ohio residents who purchased a Duet in Ohio primarily for personal, family or household purposes"). *Lonergan v. A.J.'s Wrecker Serv. of Dallas, Inc.*, No. CIV. A. 3:97CV1311D, 1999 WL 527728, at *3 (N.D. Tex. July 8, 1999), *aff'd sub nom. AJ's Wrecker Serv., Inc. v. City of Dallas, Texas*, 200 F.3d 816 (5th Cir. 1999) (finding numerosity requirement satisfied where "Plaintiffs maintain that the proposed class is estimated to number tens of thousands of individuals. They base this approximation on evidence that one Towing Defendant towed 11,074 vehicles in approximately five months during 1997 and that three Towing Defendants have performed roughly 90,000 tows within Dallas since 1997").

### c. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349-50 (quoting *Falcon*, 457 U.S. at 157). Even so, this does not mean that plaintiffs may show commonality by asserting that they have all suffered a violation of the same provision of the law. *Id.* at 350. Instead, their claims must rely on a common contention "of such a nature that it is capable of classwide resolution—which means

21

that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Thus, commonality depends not upon the "raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (quoting *Nagareda*, 84 N.Y.U. L. REV. 97, at 132). "The mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling*, 855 F.2d at 1197.

Plaintiff asserts that the "basic question of law presented by the class" is whether "the Defendants, in contravention of the provisions of Louisville Metro Ordinance 76.062, violated the rights of the members of the class, constitutional and otherwise, by willfully, intentionally and unlawfully overcharging and collecting excessive fees and forfeitures for towing, impounding and auctioning vehicles towed to the Louisville Tow Lot since February 2, 2008." [DE 26-1 at 795-96]. Plaintiff also asserts that "[t]his question is common to all members of the proposed class, and its determination will resolve the issue that is central to the validity of each of the claims of the individual members of the proposed class." *Id.* at 796. Defendants argue that Plaintiff has failed to satisfy the commonality requirement: "[I]ndividualized analysis will be required to determine when each putative plaintiff vehicle was impounded, when the vehicle was released, and whether the unique defenses of voluntary payment applies, mitigation of damages, and exhaustion of administrative remedies applies to him and any class." [DE 28 at 834].

The Court disagrees with Defendants. First, questions about when a class members' vehicle was impounded and released are questions about damages, not liability, and the Sixth Circuit has held that issues relating to damages can be considered on an individualized basis. *See In re Whirlpool Corp.*, 722 F.3d at 854 ("[N]o matter how individualized the issue of damages

22

may be, determination of damages may be reserved for individual treatment with the question of liability tried as a class action") (formatting, citation, and internal quotation marks omitted).

Second, the defense of voluntary payment does not preclude class treatment because the parties dispute whether Defendants increased the storage fees in 2008 in a "writing."  Whether a "writing" existed sufficient to place the public on notice of the fee increase is an issue of fact that applies to all class members and goes to whether class members had "full knowledge" of the allegedly illegal fees—which were based off the 2008 memorandum—when they paid them.  In addition, because Defendants assert that the voluntary payment defense applies to all class members' claims, it is a common defense and as such is not a bar to class certification.  [DE 28 at 834];  *see In re Checking Acct. Overdraft Litig.,* 307 F.R.D. 630, 651 (S.D. Fla. 2015) (finding defense of voluntary payments did not preclude class certification where "Plaintiffs allege, and offer evidence to show, that Wells Fargo promulgated misinformation and concealed material aspects of its overdraft scheme from its customers . . . If Plaintiffs can prove these facts, they will undercut Wells Fargo's defenses through the use of common evidence");  *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 39 (E.D.N.Y. 2008) ("Costco suggests . . . that the voluntary payment doctrine may be an issue for many members of the proposed class because 'approximately 55% of class members renewed late multiple times during the class period' and, therefore, may have been aware of Costco's policy based upon these multiple renewals.  Thus, far from being atypical, the voluntary payment doctrine issue may be common to numerous class members");  *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 170 (D.S.C. 2018) (finding defenses of ratification, waiver, estoppel, voluntary payment, and failure to mitigate did not preclude class certification because these defenses were "undercut" by defendants'

"repeated assertions that documents universally provided to class members themselves functioned as sufficient notice to invoke knowledge and understanding of the overdraft practices").

Third, exhaustion is not a bar to certification because the Court has found that it does not apply to the § 1983 claim, and has declined to find as a matter of law that it applies to the state-law claims. Finally, "the presence of individualized defenses, such as mitigation, going only to damages are generally regarded as no barrier to class certification." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 347 (E.D. Mich. 2001) (citation and internal quotation marks omitted).

Defendants next argue that "the unjust enrichment claims . . . depend[] on individualized facts." [DE 28 at 834]. While the Court acknowledges that "unjust enrichment" claims are sometimes not appropriate for class treatment, courts within this circuit have found they may be, when, as here, the inequity allegedly "directly and automatically flows" from the defendant's practice or policy. [DE 21-1 at 140 ("[Chief Conrad] agreed the current Metro Tow Lot practice was to apply the same storage fee per day throughout the impoundment period")]; s*ee City of Goodlettsville v. Priceline.com, Inc.*, 267 F.R.D. 523, 535–36 (M.D. Tenn. 2010) ("The court has already held that the main thrust of the City's unjust enrichment claim is that, '[b]y failing to remit [tax] funds to the plaintiff, the defendants obtained a benefit without justly compensating the plaintiff.' The inequity thus flows directly and automatically from the alleged underpayment of taxes") (internal citations omitted); *Hoving v. L.. Title Ins. Co.*, 256 F.R.D. 555, 570 (E.D. Mich. 2009) ("If the plaintiff's theory is ultimately supported with evidence, a jury could conclude that the defendant was unjustly enriched no matter what the particular facts of the individual borrower's case (subject, of course, to individual determinations of liability and defenses)"); *see also Cty. of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 671 (S.D. Fla. 2010) ("[I]t is difficult to

24

conceive of any significant equitable differences between class members, and Defendants do not suggest any").

The Ordinance provides that "[t]he Cabinet Secretary for Public Works and Services shall set all towing charges in writing. The fees set forth in this section are the initial fees and hereinafter the Cabinet Secretary for Public Works and Services may raise the fees no more than 10% each year." [DE 1-3 at 26]. Defendants assert that such a writing existed in 2008 in the form of an official memorandum. [DE 24 at 662]. But, despite repeated open records and discovery requests, Defendants have not provided a copy of it to Plaintiff and, in fact, have now admitted that it has been "discarded or lost." [DE 22 at 338; DE 24-1 at 681]. Plaintiff has demonstrated that his proposed class can provide common answers to whether Defendants breached the Ordinance in 2008. More specifically, it can provide common answers to whether the 2008 official memorandum ever existed. Likewise, the proposed class can provide common answers about whether Defendants violated the Ordinance in 2008 and onwards by eliminating the bifurcated fee schedule and charging the same storage fee for every day the vehicle in the lot. *See Flores v. Diamond Bank*, No. 07 C 6403, 2008 WL 4861511, at *2 (N.D. Ill. Nov. 7, 2008) (finding commonality where "Flores's claim-that she was charged a $2.00 fee despite the Bank's failure to comply with the EFTA's notice requirements-arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory of other class members").

### d. Typicality

To certify a class under Fed. R. Civ. P. 23(a), a plaintiff must also prove that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury

to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1988) (internal quotation marks omitted) (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082). "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082).

"The commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical." *Falcon*, 457 U.S. at 158 (1982).  "Under the commonality prong, a court must ask whether there are sufficient factual or legal questions in common among the class members' claims to make class certification economical and otherwise appropriate.  In contrast, under the typicality prong, a court must ask whether, despite the presence of common questions, each class member's claim involves so many distinct factual or legal questions as to make class certification inappropriate." *Brashear*, 2007 WL 1434876 at *6  (internal quotation marks and citation omitted).

Plaintiff argues that "[t]he same unlawful conduct - willfully, intentionally and unlawfully overcharging and collecting excessive fees and forfeitures for towing, impounding and auctioning vehicles towed to the Louisville Tow Lot – is, again, directed at the entire class."  [DE 26-1 at 798].   In support of this argument, Plaintiff asserts that Conrad "testified that Plaintiff's impoundment experience, of having his car towed, impounded and held in storage for more than 7 days, and the fees he paid, was no different than the experience of similarly situated persons

listed in the nearly 700 pages of names provided to Plaintiff's Counsel by Defendants' Counsel." *Id.*

Defendants argue that "Plaintiff's class definition does not meet the typicality requirement since it attempts to assert claims for causes of action that have a one-year limitation period and causes of action that have a five (5) year limitation period." [DE 28 at 835]. But, "the law is settled that '[t]he existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones.'" *Lauber v. Belford High Sch.*, No. 09-CV-14345, 2012 WL 5822243, at *9 (E.D. Mich. Jan. 23, 2012) (quoting *Williams v. Sinclair,* 529 F.2d 1383, 1388 (9th Cir.1975)); 2 Newberg on Class Actions § 4:26 ("Challenges based on the statute of limitations, fraudulent concealment, releases, causation, or reliance have usually been rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability"); *Schramm v. JPMorgan Chase Bank, N.A.,* LA CV09–09442 JAK, 2011 WL 5034663, *11–12 (C.D. Cal. Oct. 19, 2011) (holding that statute of limitations defense did not result in individual inquiries about when class members had actual or inquiry notice of their claims and noting that defendant's "speculation that some class members' claims may be barred on the basis of actual knowledge is not sufficient to defeat certification").

Defendants also argue that "the unique defenses of mitigation of damages, voluntary payment doctrine, exhaustion of administrative remedies and unclean hands apply and Plaintiff's prerequisite of typicality cannot be met." [DE 28 at 842]. While Defendants argue that these are unique defenses as to Plaintiff, they also assert that three of these defenses (mitigation of damages, voluntary payment, and exhaustion of administrative remedies) apply to bar all putative class members' claims. [DE 28 at 834-35]. If three of the four defenses apply to all class members,

27

then they are not unique.  And if they are not unique, then evidence related to how they apply to Plaintiff will not destroy typicality.  *See Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 646 (S.D. Ohio 2017)  ("[U]nique defenses will destroy typicality only where the defenses against the named representatives are likely to usurp a significant portion of the litigant's time and energy, and there is a danger that the absent class members will suffer if their representative is preoccupied with defenses unique to it")  (citation and internal quotation marks omitted);  *Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 430 (N.D. Ohio 2008)  ("[P]otential affirmative defenses against some class members do not bar class certification, as plaintiffs' claims need not be factually indistinguishable to be typical");  *Miller v. Optimum Choice, Inc.,* No. 03–CV–3653, 2006 WL 2130640, at *7 (D.Md. July 28, 2006)  ("Because the affirmative defenses are common across the putative class members, the defenses would not operate to destroy the predominance of common questions across the class, but would instead provide an additional link of commonality between the class members");  *Allen v. Holiday Universal*, 249 F.R.D. 166, 180 (E.D. Pa. 2008)  ("Even if applicable, the voluntary payment doctrine does not destroy typicality because the class representatives are hardly 'unique' in having made 'voluntary' payments on their contracts. Indeed, it is likely that most, if not all, health club members will have made voluntary payments, and thus the positions of Ms. Robinson and Mr. Swindell are typical of the Class as a whole")

### e. Adequacy of Representation

The final requirement is that Plaintiff shows that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Sixth Circuit has articulated two criteria to satisfy this requirement:  "1) [t]he representative must have common

interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 525.

Defendants argue that "[i]n order for class certification to be allowed, the class representative must suffer the same injury as the class members.  Lott did not forfeit his vehicle at an administrative auction . . .  The Complaint's class definition is both overly broad and Lott is not a proper class representative."  [DE 28 at 843].  Plaintiff counters:

> Plaintiff's claims are typical of the class claims because they arise as a result of the Defendants' policy of overcharging and collecting excessive fees and forfeitures for towing, impounding and auctioning vehicles towed to the Louisville Tow Lot since February 2, 2008. The same event, practice or course of conduct thus gives rise to both the claims of the Plaintiff and the claims of all other class members, including those whose vehicles were auctioned. The claims of Plaintiff and those of the class are also based on the same legal theories and are so interrelated that the interest of the class members will be fairly and adequately protected.

[DE 29 at 1061].

The Court agrees with Plaintiff.  Under the Court's revised class definition—which does not include "and those who had their automobile auctioned"—Plaintiff has "common interests with unnamed members of the class." *Senter*, 532 F.2d at 525.  As to whether Plaintiff will "vigorously prosecute the interests of the class through qualified counsel," proposed class counsel provide a detailed history of their relevant experience in litigating complex cases, like this one.   [DE 26-1 at 800].  Based on these uncontested representations, the Court find that proposed class counsel are both experienced and competent litigators who are capable of adequately representing the members of the proposed subclasses.

After considering all four elements of Fed. R. Civ. P. 23(a), Plaintiffs have satisfied their burden. Attorneys Deckard and Alexander[7] appear adequate to represent the proposed class.

### 3. Fed. R. Civ. P. 23(b)

Plaintiffs must also show that the action fits one of Rule 23(b)'s subdivisions. Plaintiffs seek certification of the proposed class of plaintiffs under Rule 23(b)(3)[8]. [DE 26-2 at 805].

Rule 23(b)(3) requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). As a result, to qualify for certification under Rule 23(b)(3), the proposed class "must satisfy a two-part test of commonality and superiority and should only be certified if doing so would 'achieve economies of time, effort, and expense.'" *Cochran v. Oxy Vinyls LP*, No. 3:06CV-364-H, 2008 WL 4146383, at *11 (W.D. Ky. Aug. 29, 2008) (quoting *Sterling*, 855 F.2d at 1196).

"Subdivision (b)(3) of Rule 23 parallels subdivision (a)(2) of Rule 23 in that both require that common questions exist, but subdivision (b)(3) contains a more stringent requirement that common issues 'predominate' over individual issues." *Whitlock v. FSL Mgmt., LLC*, No. 3:10CV-00562-JHM, 2012 WL 3274973, at *11 (W.D. Ky. Aug. 10, 2012). "To satisfy the predominance

---

[7] Defendants contend—without additional argument or citation to authority—that the Court should disqualify Mr. Alexander because he "is a material witness and his involvement is at the core of the facts." [DE 28 at 844]. Because Defendants have failed to support their cursory, yet significant, request with any authority, the Court declines to consider it at this time.

[8] Defendants contend that the Court should not certify Count V (Declaratory and Injunctive Relief) of the Complaint. [DE 28 at 845]. Plaintiff disagrees. [DE 29 at 1063-64]. Rule 23(b)(2) provides that "[a] class action may be maintained if Rule 23(a) is a satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Because Plaintiff moved to certify a class under 23(b)(3)—and not under Rule 23(b)(2)—the Court declines to certify Count V. [DE 26-1 at 805].

requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof . . . predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564 (internal quotation marks and citation omitted).

"There are no bright lines for determining whether common questions predominate." *In re Cardizem*, 200 F.R.D. at 307. Instead, the Court must determine whether the questions common to the class are "at the heart of the litigation," *Powers*, 501 F.3d at 619, while keeping in mind "the mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling*, 855 F.2d at 1197.

Plaintiff argues that the proposed class satisfied the predominance requirement: "[T]he central issue is whether the Defendants, in contravention of the provisions of Louisville Metro Ordinance 76.062, violated the rights of the members of the class . . . by willfully, intentionally and unlawfully overcharging and collecting excessive fees and forfeitures for towing, impounding and auctioning vehicles towed to the Louisville Tow Lot." [DE 26-1 at 801]. Defendants disagree: "Individualized issues in Plaintiffs claims predominate especially with respect to Plaintiff's and the proposed class unjust enrichment claims and negligent misrepresentation claims where individual fact issues predominate and where justifiable reliance becomes and [sic] element. Such individualized equity issues predominate." [DE 28 at 844].

Defendants' potential liability arises from the common question of whether they violated the Ordinance. Even if the amount of damages may vary among the proposed members of the class, the operative facts are the same—all proposed class members were allegedly overcharged. *See Young*, 693 F.3d 544 ("Defendants point to situations, such as the provision of incorrect information by a policyholder, which they claim relieve them of responsibility for an incorrect

premium tax charge. These potential individual inquiries do not defeat the predominance of common questions"); *In re HCA Holdings, Inc.*, No. 14-0511, 2015 WL 10575861, at *2 (6th Cir. Feb. 26, 2015) ("Here, the district court applied our precedent that an affirmative defense, standing alone, does not compel a finding that common liability issues do not predominate . . . The district court noted the Plaintiffs' evidence that certain sophisticated investors did not have knowledge of the information and found that the Defendants' speculation that other investors could have known this information could not, standing alone, defeat predominance").

As to Plaintiff's negligent misrepresentation claim, Defendants argue that "individualized reliance is at issue. Here any alleged negligent misrepresentations would likely be oral not written, because there was an ordinance setting forth rates to charge with caps, individualized determinations based upon the issues of reliance and reasonableness of such reliance would be required." [DE 23-1 at 536]. Plaintiff responds that "[t]he amount of the tow lot fees would be based on the Defendants storage fee policy in effect at the time of impoundment. This information, . . . would not vary from member to member of the putative class. It would not vary because it is based on the Defendants unauthorized policy." [DE 25 at 751]. Plaintiff has presented evidence that tow lot employees told him how much he would owe based on Defendants' policy. [DE 21-2 at 163]. And Defendants have provided evidence that tow lot employees are required to follow standard operating procedures. [DE 21-1 at 140; DE 23-12 at 651; DE 28-8 at 1045 ("Metro Tow lot follows certain standing operating procedures and the intent was to follow Metro Ordinance 72.062 and in accord with the October 19, 2012 impoundment fees authorized by Director of Public Workers including a storage fee of $13.00 daily for cars.")]. The Court finds that common questions about Defendants' alleged negligent misrepresentations about storage fees predominate because Plaintiff has affirmatively demonstrated that tow lot employees were required to follow

32

Defendants' fee policies.  [DE 24 at 665; DE 28-8 at 1046 ("[B]ecause of the . . . pandemic . . . only one day of storage fees for car impounded are being charged . . .   Once this . . . situation ends, the Tow Lot will only be charging the lesser amount for daily storage fees after the first 7 days of impoundment per the Metro Ordinance not the $13,00 [sic] per day")];  *see Bobbitt v. Acad. of Ct. Reporting, Inc.*, 252 F.R.D. 327, 342 (E.D. Mich. 2008)  ("[E]ach of these counts also requires proof that the defendants promised to confer associate's degrees and that they had no legal authority to do so. And although the defendants argue that proof of the false promise requires individualized proof, the Court is satisfied that the plaintiffs have put forth allegations and evidence that appears to follow a pattern")  (citation and quotation marks omitted); *Bittinger v. Tecumseh Prod. Co.*, 123 F.3d 877, 884 (6th Cir. 1997)  ("Tecumseh argues that the representations of company management on which the plaintiffs rely (most but not all of which were oral) were not uniformly communicated to all class members . . . The plaintiffs' evidence appears to follow a pattern, and the people they claim made the representations are largely the same people").

> As Plaintiffs allege, Defendants have violated the rights of the proposed class members:
>
> as a result of assessing unauthorized and unlawful fines and fees for towing and related services, and the auction of vehicles impounded for individuals unable to pay for the unauthorized and unlawful fines and fees resulting in a loss of the equitable value of their vehicles,  Louisville Metro Government and its officials have violated the Plaintiffs and similarly situated persons' rights under the Fifth and Fourteenth Amendments to the United States Constitution, the Eighth Amendment right to be free of excessive fines and fees, and the Constitution and common law of the Commonwealth of Kentucky.

[DE 1-3 at 10].  While the amount of damages incurred by each proposed class member may be individualized, the significant and common issue of Defendants' alleged violations outweighs any

33

issues relating to each proposed class member's individual damages. Thus, the predominance requirement of Rule 23(b)(3) has been satisfied.

Rule 23(b)(3) requires that the proposed "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court must consider these factors to determine whether a class action is the superior method for adjudicating the controversy:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*Id.*

These factors support certification. First, the members of the class have no interest in individually controlling the prosecution of their claims. In fact, individual claims might be abandoned given the relatively meager individual damages at stake for some potential class members. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action."). Second, the Court is unaware of any other lawsuits in this district in which any of the potential class members have asserted similar claims against Defendants or that any other forum is more desirable or appropriate than this District. Third, deciding whether Defendants have charged excessive and unauthorized storage fees would "'both reduce the range of issues and promote judicial economy.'" *Whitlock*, 2012 WL 3274973 at *13 (quoting *Dodge v. County of Orange*, 226 F.R.D. 177, 184 (S.D.N.Y. 2005)). Finally, although there are inherent

difficulties in managing a class action, those difficulties do not render class action inappropriate.

Thus, Rule 23(b)(3)'s superiority requirement is met.

### III.   CONCLUSION

For all these reasons, **IT IS ORDERED** as follows.

1. Defendants' Motion for Summary Judgment [DE 21] is **DENIED**.

2. Defendants' Motion to Strike [DE 23] is **DENIED**.

3. Plaintiff's Motion to Certify Class [DE 26] is **GRANTED.**   Counts I, II, and IV of the

Complaint shall be maintained as a class action under Fed. R. Civ. P. 23(b)(3) by the Plaintiff as

Class Representative on behalf of the class defined as:

> [A]ll persons with vehicles registered to them whose vehicles were assessed a storage fee in excess of $10 for each of the first seven days a vehicle was in storage, plus a $5.00 fee per day for each additional day thereafter that a vehicle remained in storage since on or about February 2, 2008.

4. Count III is dismissed with prejudice.

Rebecca Grady Jennings, District Judge
United States District Court

March 17, 2021

cc:   counsel of record

35