UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| TYROME LOTT) | |
| Plaintiff) | |
| ) | |
| v.) | CASE NO. 3:19-CV-00271-RGJ |
| ) | |
| LOUISVILLE/JEFFERSON COUNTY) | |
| METRO GOVERNMENT, et al.) | |
| Defendants) | |

**JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

Plaintiff, Tyrome Lott, individually and on behalf of all members of the Class and Louisville/Jefferson Metro Government ("Metro Government"), et. al., by and through counsel, hereby move the Court pursuant to Federal Rule of Civil Procedure 23 for Final Approval of Class Settlement. As detailed below, the Settlement is fair, reasonable, and adequate, and satisfies all criteria for final approval.

Respectfully submitted,

/s/ James L. Deckard
James L. Deckard
Matthew R. Malone
HURT, DECKARD & MAY, PLLC
106 W. Vine St., Suite 401
Lexington, Kentucky 40507
Telephone: (859) 254-0000
jdeckard@hdmfirm.com
mmalone@hdmfirm.com
*Plaintiffs' counsel*

and

1

Michael T. Alexander
9103 Catania Drive
Louisville, Kentucky 40299
Telephone: (502) 554-0139
alexanderandassociates123@gmail.com
*Plaintiffs' counsel*


Michael J. O'Connell
Jefferson County Attorney

/s/John F. Carroll
John F. Carroll
Assistant Jefferson County Attorney
200 South Fifth Street, Suite 300N
Louisville, Kentucky  40202
john.carroll2@louisvilleky.gov
Telephone:  (502) 574-6321

and

Jan M. West
Goldberg & Simpson, LLC
Norton Commons
9301 Dayflower Street
Prospect, Kentucky  40059
jwest@goldbergsimpson.com
*Co-counsel for Defendants
Louisville/Jefferson County Metro
Government, et al.*

## **MEMORANDUM IN SUPPORT**

### **I. INTRODUCTION**

The Agreed Motion for Settlement Agreement ("Settlement Agreement") (Dkt. 88) was preliminarily approved by this Court on March 17, 2023 (Dkt. 90). Under the terms of the Settlement Agreement, and the preliminary approval Orders of this Court (Dkt. 90 and 92), Defendants agreed to pay a total settlement in the amount of $1,500,000.00. At that time, it was estimated that of this amount, through a submitted claim process, class members would receive at least $650,000.00, with an award of attorney fees and litigation costs not to exceed $450,000.00 or 30% of the total settlement amount. A class representative incentive award would be considered and determined by the Court at a final hearing. A *cy pres* award also would be considered and determined at that time for class members with claims arising from February 2, 2008 to March 14, 2014, and cash payments to class members with claims arising from March 15, 2014 to March 19, 2021. The Court also requested the Parties to explain in more detail how the award and payments would be given to the class members and the method for calculating any such awards and payments. In accord with this Court's Opinion and Order [DE 90], Plaintiffs' counsel will file a separate pleading addressing the above concerns contemporaneous with this joint motion for final approval of the settlement.

Finally, in its Order and Amended Order granting preliminary approval, the Court established a schedule for Class Notice to be mailed, an Opt-Out deadline, Motion for Final Approval, Approval of Fees and Expenses, Objection deadline, Supplemental Motions, and a Fairness Hearing. The parties have previously provided this Court with facts and legal arguments establishing that this settlement should be approved in the request for preliminary approval. Those

facts and arguments are incorporated herein and, to the extent possible, will not be repeated. Instead, this Memorandum in Support of Final Approval will discuss the applicable Fed. R. Civ. P. 23 standards that must be met for this Court to grant Final Approval.

## THE SETTLEMENT AGREEMENT

The Parties Settlement Agreement, as demonstrated by the Notice and administration process, provides direct and tangible benefits to all class members and has been favorably received by them.

### A. THE CLASS

The Settlement Agreement maintains the definition of the class as certified by this Court. Specifically, the class is defined as: All persons with vehicles registered to them whose vehicles were assessed a storage fee in excess of $10 for each of the first seven days a vehicle was in storage, plus a $5.00 fee per day for each additional day thereafter that a vehicle remained in storage since on or about February 2, 2008. [DE 30].

### B. CLASS NOTICE AND SETTLEMENT ADMINISTRATION

The Court's Preliminary Order [DE 90] directed Class Counsel to mail Notice Materials to class members. To comply with this directive, Class Counsel contracted with Kroll Settlement Administration ("Kroll"), an experienced national class action settlement administration firm, to perform the duties and responsibilities in all aspects of Settlement Administration. *See, e.g.,* https://www.kroll.com/en/services/settlement-administration/class-action. The total *estimated* cost for Kroll's work in completion of settlement administration services in this action is $153,662. The Parties further agreed the estimated cost of settlement administration services would be paid from the Settlement Fund, with an initial payment tendered by Defendants to Kroll in the amount

4

of $61,000 (sixty-one thousand dollars) to complete notice mailings and other administrative tasks as outlined in Kroll's detailed invoices.

This Court approved a notice [DE 89-1] which was addressed by notice postcards to approximately 39,303 potential claim members in the March 15, 2014 to March 19, 2021 time period by Kroll Settlement Administration ("Kroll") (mailed within 3 business days of receipt of the updated database on March 31, 2023 from Metro Government). To address all potential class members Kroll also used a press release as well as multi-week general publication advertisements in the Courier-Journal, the Leo Weekly and the Louisville Defender. Likewise, Kroll established an internet website to handle potential claims www.LottClassAction.com and provided a call center for questions. The last day for submission of claims was June 13, 2023.

In response to the notice program, Kroll received approximately 379 claim forms (333 internet-based responses and approximately 46 through the mail – post-marked claims could increase this count). Kroll is in the process of preparing a formal declaration, since the claim period ended on June 13, 2023, which will be filed with the Court as soon as practical. Kroll's declaration will also address the approximate payout to allowed claimants.

To date, there has been one (1) objection filed regarding the Settlement. The objection arose from an individual who claims to have had his vehicle towed in 2008. A copy of the objection is attached and incorporated hereto as Exhibit "1". The individual is not objecting to attorney fees or expenses but wants to be paid rather than money going to a *cy pres* recipient. This individual's possible claim is addressed below.

### C. REPORT TO COURT ON OPT OUTS

Only four (4) potential class members have opted out of the proposed Settlement. Three of those members have indicated they did not have a vehicle towed and stored and therefore are not a part of the certified class or requested to be excluded without any explanation provided.

### II. LEGAL STANDARD

"A class settlement is presumptively reasonable upon preliminary approval, and an individual who objects consequently has 'a heavy burden' of demonstrating that the settlement is unreasonable." *See Brent v. Midland Funding, LLC*, 2011 WL 386363 *12 (N.D. Ohio Sept. 1. 2011)(*quoting Williams v. Vukfovich*, 720 F.2d 909, 921 (6th Cir. 1983)). The law favors settlement, particularly in class actions where substantial judicial resources can be conserved by avoiding formal litigation. *Id.* (*citing* 4 Alba Conte & Herbert Newberg, Newberg on Class Actions, § 11.41 (4th ed. 2002); *Int'l Union, United Auto, Aerospace, and Implement Workers of America v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir.2007) (noting "the federal policy favoring settlement of class actions").

In considering whether the settlement is fair, reasonable, and adequate, the trial court considers the following factors: (1) reaction of absent class members; (2) amount of discovery engaged in by the parties; (3) likelihood of success on the merits; (4) risk of fraud or collusion; (5) complexity, expense, and likely duration of the litigation; (6) opinions of class counsel and class representatives; (7) public interest. *Brent,* 2011 WL 386363 *12; (*citing Int'l Union*, 497 F.3d at 631).

## **ARGUMENT**

### A. The Settlement Agreement is Fair, Reasonable, and Adequate

Analysis of the above factors demonstrates that the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate.

#### 1. The reaction of absent class members.

The reaction of absent Class Members has been overwhelmingly positive. Of the Class Members only 4 Class Members opted-out resulting in a *de minimis* opt-out rate. This incredibly low opt-out rate shows that the vast majority of the Class Members believe that the Settlement is fair and adequate. *See, e.g., Garner v. State Farm Mut. Auto. Ins. Co.,* 2010 WL 1687832, at * 15 (N.D., Cal. Apr. 22, 2010) (0.4% opt-out rate "is a further indication of the fairness of the Settlement"). In addition, only 1 objection was filed. Again, the absence of objectors demonstrates unusually broad support for the Settlement. *See, e.g. Browne v. Am. Honda Motor Co., Inc.*, 2010 WL 9499072, *18 (C.D. Cal. July 29, 2010)(finding that low percentage of objections favors settlement approval).

As discussed above, with respect to the one objection lodged, the potential Class Member requested compensation. Metro Government was able to locate a document appearing to indicate that this vehicle was towed in 2009 during the class period. A *cy pres* award was preliminarily approved by the Court in such instances because records during this time period are incomplete and unreliable.[1] The parties will address this objection at the fairness hearing or in additional pleadings prior to the hearing.

---

[1] The reason the parties agreed to notice by publication is that the Metro records were handwritten and not organized or complete. The records were in numerous boxes in no particular order or time frame and most were incomplete. In fact, many of the boxes were infested with wasps and bugs as they had been stored outdoors for a long period of time. Counsel for both parties viewed the

2. **Plaintiffs have conducted extensive and adequate factual discovery**.

"To insure that Plaintiffs have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement, the stage of the proceedings and the discovery taken must be considered." *In re Nationwide Financial Servs. Litigation*, 2009 WL 8747486 *5 (S.D. Ohio Aug. 19, 2009) (internal citation omitted).

Here, Plaintiffs have conducted extensive discovery from the Defendants. Specifically, Plaintiffs have served extensive written discovery on Defendants which included multiple sets of interrogatories and requests for production; reviewed documents, emails, and other Electronic Data related to Defendants' policies and practices; deposed former Chief of LMPD Steve Conrad; and personally visited Defendants' storage facility to review boxes of records dating back to 2005 concerning this case. Prior to the litigation, extensive use of Kentucky's Open Records Laws were utilized to glean the history of documents associated with towing and storage fees under Louisville Metro Ordinances.

Defendants have also served extensive written discovery on Plaintiff and deposed the Class Representative. As such, the Parties have engaged in far- reaching discovery and have vigorously litigated this Action enabling a full determination as to the likelihood of success on class certification and the merits.

3. **Likelihood of Success on the Merits**

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *In re Nationwide Financial Services Litigation*, 2009 WL 8747486 *2 (quoting *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir.

---

boxes where records were stored and agreed that notice by publication was the best notice practicable under the circumstances.

1984)). "Thus, in assessing the Settlement, the Court should balance the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery for them, against Plaintiffs' likelihood for success on the merits." *Id.* (internal citations omitted).

Plaintiff is confident he will succeed on the merits of his claims against Defendants. At this time, Plaintiff has prevailed on all motions filed with court, except Defendants' Second Motion for Summary Judgment which is currently pending. He has also prevailed concerning the Defendants' Petition for Permission to Appeal, which was filed with the Sixth Circuit Court of Appeals. However, Plaintiff's confidence is certainly tempered by the Defendants pending Second Motion for Summary Judgment, which seeks dismissal of the case as a matter of law. These factors, and others such as the general risks inherent in any litigation, contribute to the inevitable balancing of risks that all parties must perform when engaging in settlement negotiations.

Importantly, the substantial relief provided to every Class Member under the Settlement is balanced against these risks and burdens. Any Class Member who files a Claim Form online or by mail will be reimbursed for any overcharges which can be verified by the Claims Administrator. The claim process is simple, efficient, and no proof or other evidence of entitlement to a recovery is required of Class Members. Through this claims process, Defendants' potential exposure in Class Member payments will not exceed a certain amount as provided. This value to the Class is significant, especially when compared to the risk of continued litigation and the relatively small amount of actual damages suffered by each Class Member.

4. **No Risk of Fraud or Collusion Exists.**

No risk of fraud or collusion exists because this Settlement was negotiated after more than three years of hard-fought litigation, at arms-length negotiations by experienced and reputable counsel and was facilitated by an experienced mediator. Settlement negotiations extended over a 13-month period, with two settlement conferences held before the Magistrate Judge and a final

settlement conference held before an experienced private mediator. These factors demonstrate that the Settlement was not the product of fraud or collusion. Moreover, attorneys' fees were not negotiated until after the agreement on payment to the Class was achieved.

The negotiation of attorneys' fees did not affect, in any way, the monetary relief negotiated for the Class and it cannot be argued that any collusion existed between the parties with respect to any aspect of this Settlement.

### 5. **Continued Litigation would be Complex, Lengthy, and Uncertain.**

"In determining the fairness of the Settlement, courts also consider '[t]he complexity, expense and likely duration of the litigation.'" *In re Nationwide Financial Services Litigation*, 2009 WL 8747486 *4 (quoting *In re Telectronics*, 137 F. Supp. 2d at 1013 (internal citations omitted)). Class actions are inherently complex and settlement "avoids the costs, delays, and multitude of other problems associated with them.'" *Id*. (internal citations omitted). "As such, avoiding the delay, risks, and costs of continued litigation against a defendant is a valid reason for counsel to recommend and for the court to approve a settlement." *Id*. (internal citation omitted).

As detailed above, this litigation has already lasted more than three-plus years. It has involved extensive motion practice, included hard fought and voluminous discovery, and raised several complex legal issues, including some unsettled areas of the law. The settlement avoids the substantial expense of additional discovery, continued motion practice, hiring of expert witnesses regarding damages, and a complex and expensive trial – all of which would likely not materially increase the Class recovery and could result in a reduction of the amounts available to the class. In addition, a multitude of policies and procedures have been implicated by Plaintiffs' allegations and Defendant possesses numerous affirmative defenses to these claims, meaning the time and effort required to litigate this matter through trial would be substantial and the issues

raised would be complicated. *See Burka v. New York City Transit Authority*, 129 F.R.D. 80, 83 (S.D.N.Y. 1990) (stating that because the issues of law and fact before the court were complex, the decision to avoid trial by settlement "appears to have been a wise one"). *Id.*

In contrast, the proposed settlement provides Class Members with a monetary award considering actual damages suffered. Moreover, that monetary award is being provided without having to endure the risks, effort, duration, and expense if this litigation continued.

    6. **Opinions of Class Counsel and the Class Representatives.**

In assessing the settlement, this Court must also consider the experience of counsel and their views of the settlement. *Thacker v. Chesapeake Appalachia, L.L.C.,* 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010) ("In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference").

Here, Class Counsel includes experienced attorneys. Class Counsel is experienced in both the litigation and settlement of class actions of this type, has conducted extensive direct discovery, and has thoroughly evaluated the merits of this case. Given the experience of Class Counsel in this matter and in similar matters, their opinions that the terms of this settlement are fair, adequate, and reasonable should be given substantial weight in approving the settlement.

    7. **The Strong Public Interest In The Amicable Resolution Of Class Action Lawsuits Favors The Proposed Settlement**

"There is an overriding public interest in favor of settlement of class action lawsuits." *In re Nationwide Financial Services Litigation*, 2009 WL 8747486 *8 ("The proposed Settlement ends potentially long and protracted litigation and frees the Court's valuable judicial resources."). "Settlement agreements should . . . be upheld whenever equitable and policy considerations so

permit. By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over- burdened courts, and to citizens whose taxes support the latter. An amicable compromise provides the more speedy and reasonable remedy for the dispute." *Id.*, citing *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976), cert. denied 429 U.S. 862 (1976).

Here, considering provision of substantial benefits to the Class Members, this "overriding public interest" would be well-served by approval of the settlement.

B. **The Class has been certified.**

On March 17, 2021, the court issued a Memorandum Opinion and Order which denied Defendants' Motion for Summary Judgment and Motion to Strike and granted Plaintiff's Motion for Class Certification. (Dkt. 30)    The court defined the class as follows: [A]ll persons with vehicles registered to them whose vehicles were assessed a storage fee in excess of $10 for each of the first seven days a vehicle was in storage, plus a $5.00 fee per day storage fee for each additional day thereafter that a vehicle remained in storage since on or about February 2, 2008. *Id*. This applies to automobiles but trucks were charged at different rates.

To grant certification of a settlement class, the requirements of Rule 23 must be satisfied. *See* Fed. R. Civ. P. 23.  Rule 23(e) governs the issue of class certification, whether the proposed class is a litigated class or a settlement class.  All criteria for certification of a class for litigation purposes, except manageability, apply to certification for settlement purposes. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).   As found and established by the court's March 17, 2021, Memorandum and Order, all Rule 23 prerequisites for certification are satisfied and the Court's previous ruling is incorporated [Dkt. 90] as if set forth herein on this concern for brevity sake.

C. **The Proposed Notice was more than Adequate**.

Rule 23(e)(1)(B) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal or compromise." The notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, (1985) (internal citation omitted); *see also Fidel v. Farley*, 534 F.3d 508, 513-14 (6th Cir. 2008). Due process requires individualized notice where the names and addresses of class members "may be ascertained through reasonable effort." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173, 177 (1974).

Here, the notice requirement met all of the requirements of Rule 23 and due process. The notice procedure was addressed by the Court by the March 17, 2023 Memorandum Opinion [Dkt. 90] and the Order clarifying [Dkt 92]. Direct Postcard Notice was sent to all Class Members for whom valid addresses existed, a website was created, and general publication was made. In addition, the parties supplemented these standard notice procedures with a call center, and the issuance of a press release that resulted in additional media coverage. The notice program used here was at minimum "reasonably calculated, under all circumstances to apprise interested parties" and provided ample notice to potential class members.

## CONCLUSION

For the reasons set forth above, the Court should grant the parties' Joint Motion for a Final Order approving this Class Action Settlement.

Respectfully submitted,

/s/ James L. Deckard
James L. Deckard
MATTHEW R. MALONE
HURT, DECKARD & MAY, PLLC
106 W. Vine St.; Suite 401
Lexington, Kentucky 40507
Telephone: (859) 254-0000
jdeckard@hdmfirm.com
mmalone@hdmfirm.com
*Plaintiffs' counsel*

and

Michael T. Alexander
9103 Catania Drive
Louisville, Kentucky 40299
Telephone: (502) 554-0139
alexanderandassociates123@gmail.com
*Plaintiffs' counsel*


Michael J. O'Connell
Jefferson County Attorney

/s/John F. Carroll
John F. Carroll
Assistant Jefferson County Attorney
200 South Fifth Street, Suite 300N
Louisville, Kentucky 40202
john.carroll2@louisvilleky.gov
Telephone: (502) 574-6321

and

Jan M. West
Goldberg & Simpson, LLC
Norton Commons
9301 Dayflower Street
Prospect, Kentucky 40059
jwest@goldbergsimpson.com
*Co-counsel for Defendants*
*Louisville/Jefferson County Metro*
*Government, et al.*

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 14, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

/s/ James L. Deckard
James L. Deckard
jdeckard@hdmfirm.com