UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-271-RGJ

TYROME LOTT                                                                                           PLAINTIFF

v.

LOUISVILLE METRO GOVERNMENT, et al.                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tyrome Lott ("Lott") and Defendants Louisville-Jefferson County Metro Government ("Metro Government"), Steve Conrad, Erika Shields in her official capacity as Chief of Louisville Metro Police Department, and Vanessa Burns individually and in her official capacity as Secretary of Public Works as Assets for Metro Government (collectively "Defendants," and together with Plaintiff, the "Parties"), jointly move for final settlement approval. [DE 94]. Lott also moved for attorney fees [DE 93] and filed a motion to supplement the briefing [DE 95].

Having fully heard the parties at the fairness hearing on July 19, 2023, [DE 97] considered the briefing, and all motions being unopposed, the motions [DE 93; DE 94; DE 95] are **GRANTED** and the Court **FINDS** and **ORDERS** as follows:

1. **Incorporation of Other Documents**. This Final Order Approving Class Action Settlement incorporates the Settlement Agreement.

2. **Jurisdiction**. Because adequate notice has been disseminated and all potential Class Members have been given the opportunity to opt-out of this action, the Court has personal jurisdiction with respect to the state law and common law claims of all Class Members. The Court has subject-matter jurisdiction over this action

1

    pursuant to 28 U.S.C. §§ 1331 and 1367, including jurisdiction to approve the proposed settlement, grant certification of the Class, and dismiss the Action on the merits with prejudice.

3. **Class Certification**. The Class is certified for settlement purposes the Court finding that the Class satisfies the applicable requirements of Fed. R. Civ. P. 23 and due process.

   a. The "Class includes all persons with vehicles registered to them whose vehicles were assessed a storage fee in excess of $10 for each of the first seven days a vehicle was in storage, plus a $5.00 fee per day for each additional day thereafter that a vehicle remained in storage since on or about February 2, 2008, and who did not file a valid Opt-Out Request. The total number of class members is in excess of 39,303 persons.[1]

4. **Adequacy of Representation**. Class Counsel and the Class Representatives have fully and adequately represented the Class for purposes of entering into and implementing the Settlement and have satisfied the requirements of Fed. R. Civ. P. 23(a)(4).

5. **Class Notice**. The Court finds that all notice requirements, and follow-up procedures, have been implemented pursuant to the Settlement Agreement and this Court's Preliminary Approval Order and that they:

   a. constituted the best practicable notice to Class members under the

---

[1] This is the identifiable records period for March 15, 2014 to current. Defendants have submitted that no easily ascertainable records or database exist from February 2, 2008 to March 14, 2014 which is addressed by a cy pres award.

      circumstances of this action;

  b. constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of (i) the pendency of this action, (ii) the terms and conditions of the Settlement Agreement, their rights thereunder, and instructions on how to submit, and the timetable for submission of, a Claim Form, (iii) their right to exclude themselves from the Class and the proposed settlement and submit an Opt-Out Request, (iv) their right to object to any aspect of the proposed settlement (including final certification of the proposed settlement, the adequacy of the Class's representation by the Class Representatives or Class Counsel, and/or the award of attorneys' fees and costs and the Enhancement Payments to the Class Representatives), (v) their right to appear at the Final Hearing, either on their own or through counsel hired at their own expense, if they did not exclude themselves from the Class, and (vi) the binding effect of the Orders and Judgment in this action, whether favorable or unfavorable, on all persons who do not file an Opt-Out Request;

  c. constituted notice that was reasonable, adequate, and sufficient notice to all persons entitled to be provided with notice; and

  d. constituted notice that fully satisfied the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), and the United States Constitution (including the Due Process Clause) and any other applicable law.

6. **Final Settlement Approval**. The terms and provisions of the Settlement Agreement have been entered into in good faith and are fully and finally approved as fair, reasonable, adequate, and in the best interests of each of the Parties. The Parties and Class Counsel are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.

7. **Binding Effect**. The terms of the Settlement Agreement and this Final Order and the accompanying Final Judgment are binding on the Parties, the Class Representatives, as well as their heirs, executors, and administrators, successors and assigns, and those terms shall have res judicata and other preclusive effect in all pending and future claims, lawsuits, or other proceedings maintained by or on behalf of any such persons, to the extent those claims, lawsuits, or other proceedings involve matters that were or could have been raised in this Action.

8. **Permanent Injunction**. All Class Members are barred and enjoined from (i) filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other claim, lawsuit, arbitration, or administrative, regulatory, or other proceeding or order in any jurisdiction based on, arising out of, or relating to the claims and causes of action in this litigation and/or the Settlement Agreement; and (ii) organizing or soliciting the participation of any Class Members into a separate class for purposes of pursuing as a purported class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action) any claim, lawsuit, or other proceeding based on,

arising out of, or relating to the claims and causes of action or the facts and circumstances relating thereto, in this litigation and/or the Settlement Agreement. The Court finds that issuance of this permanent injunction is necessary and appropriate in aid of the Court's jurisdiction over the litigation and to protect and effectuate the Court's Final Order and Final Judgment.

9. **Enforcement of Settlement**. Nothing in this Final Order or the accompanying Final Judgment shall preclude any action to enforce the terms of the Settlement Agreement.

10. **Modification of Settlement Agreement**. The Parties are hereby authorized, without needing further approval from the Court, to agree to and adopt such amendments to, and modifications and expansions of, the Settlement Agreement, as are in writing and signed by the Parties' counsel and are consistent with this Final Order and do not limit the rights of the Class Members under the Settlement Agreement.

11. **Retention of Jurisdiction**. The Court has jurisdiction to enter this Final Order and the accompanying Final Judgment. This Court expressly retains jurisdiction as to all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement and of this Final Order and the accompanying Final Judgment, and for any other necessary purpose, including, without limitation,

    a. enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims, or causes of action in the Consolidated

      Litigation that, in whole or in part, are related to or arise out of the Settlement Agreement, this Final Order, or the Final Judgment (including, without limitation, whether a person or entity is or is not a Settling Plaintiff; whether claims or causes of action allegedly related to this case are or are not barred by this Final Order and the Final Judgment);

  b. entering such additional Orders as may be necessary or appropriate to

  c. protect or effectuate the Court's Final Order and the Final Judgment approving the Settlement Agreement, dismissing all claims on the merits and with prejudice, and permanently enjoining Class Members from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement; and

  d. entering any other necessary or appropriate Orders to protect and effectuate this Court's retention of continuing jurisdiction.

12. **No Admissions**. Neither this Final Order and the accompanying Final Judgment nor the Settlement Agreement (nor any other document referred to here, or any action taken to carry out this Final Order and the Final Judgment) is, may be construed as, or may be used as, an admission or concession by or against the Defendant or the Plaintiffs of the validity of any claim or any actual or potential fault, wrongdoing or liability. Entering into or carrying out the Settlement Agreement, and any negotiations or proceedings related to it, shall not be construed as, or deemed evidence of, an admission or concession as to the Defendant's denials or defenses and shall not be offered or received in evidence

in any action or proceeding against any party hereto in any court, administrative agency or other tribunal for any purpose whatsoever, except as evidence of the settlement or to enforce the provisions of this Final Order and Final Judgment and the Settlement Agreement; provided, however, that this Final Order, the accompanying Final Judgment, and the Settlement Agreement may be filed in any action against or by the Defendant or the Plaintiffs to support a defense of res judicata, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim.

13. **Claims Administrator Payment**. Defendant shall pay the reasonable and necessary Settlement Administration Costs of the Claim Administrator in accordance with the terms and conditions set forth in the Settlement Agreement. This includes the following:

    a. Payment from the Defendants to Kroll Settlement Administration ("Kroll") for their resolution of the claimant payments, tax requirements and on-going expenses associated with the payments to claimants is in the best interest of the Class and the Defendants shall provide payment to Kroll consistent with Kroll's total proposed cost estimate;

    b. Any payments made by the Defendants, including the previous $61,000, shall be treated as a reduction of their $1,500,000 total settlement amount;

    c. The Defendants shall reimburse Class Counsel in the amount of $26,272.82 for their previous payment(s) to Kroll.

14. **Attorneys' Fees and Expenses**.  The Court makes the following findings with respect to attorneys' fees:

   a. The requested attorneys' fees of $450,000 or 30% of the $1.5 million common fund created as a result of Class Counsel's efforts is reasonable. The Defendant shall also reimburse Class Counsel $2,436.67 for litigation expenses which shall also be treated as reduction of the total settlement amount.

   b. The Settlement confers substantial benefits on the Settlement Class and the value of the Settlement is readily quantifiable.

   c. Class Counsel vigorously and effectively pursued Plaintiffs' and the Class' claims. These efforts to date have included factual investigation, drafting complaints, briefing and arguing motions to dismiss, engaging in and responding to discovery, successful appellate work before the Sixth Circuit Court of Appeals, successfully negotiating the terms of the Settlement with Metro Government, and other work for the benefit of Plaintiffs and the Class.

   d. The amount of the Settlement constitutes a "common fund." It has long been recognized that attorneys who recover a fund for others are entitled to reasonable attorneys' fees from that fund.

   e. Under Federal Rule of Civil Procedure 23(h), "[i]n a certified class action, the court may award reasonable attorneys' fees and non-taxable costs that are authorized by law or by the parties agreement."

f. Under Federal Rule of Civil Procedure 23(h)(1), the request for an award of attorneys' fees and non-taxable costs in a class action must be made by motion under Federal Rule of Civil Procedure 54(d)(2), and notice of that motion must be served on all parties and directed to Class Members in a reasonable manner.

g. The requirements of Federal Rule of Civil Procedure 23(h)(1) have been satisfied. Notice to the Class members informed the Class Members of Class Counsel's intention to seek an attorneys' fee award of up to $450,000 out of the Settlement Fund as well as reimbursement of litigation costs and expenses. The Notice provided Class Members the opportunity to object after the Motion was filed. No Class member has objected to either Class Counsel's attorneys' fee request or their request for reimbursement of litigation costs and expenses.

h. In order to determine what constitutes a reasonable fee in a particular case, courts may use the "percentage of the fund" and/or "lodestar" methodology. The Court concludes that the percentage of the fund method is the proper method to use to calculate reasonable attorneys' fees to compensate Class Counsel in this litigation, but that fees are reasonable under either approach

i. 30% of the common fund is within the range of fees ordinarily awarded in class action litigation and is reasonable based on

   i. The value of the benefit rendered to the Class;

    ii. The value of the services on an hourly basis;

    iii. That the services were undertaken on a contingent fee basis;

    iv. Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

    v. The complexity of the litigation;

    vi. The results achieved in this case; and

    vii. The professional skill and standing of counsel involved on both sides.

j. The Settlement provides a clear benefit to the Settlement Class: Metro Government will pay out of the Settlement via Kroll Settlement Administration class members who overpaid for towing and storage fees as well as remaining funds going to organizations committed to furthering access to justice such as Simmons College of Kentucky's Pre-law and Constitutional studies program, less attorneys' fees, litigation costs and expenses, and notice and claims administration costs.

k. Class Counsel are operating on a contingency basis and bore (and continue to bear) a significant risk of non-payment in pursuing these claims.

l. The legal and factual issues are complicated and highly uncertain in outcome. This case is no exception.

m. In the absence of the Settlement with Metro Government, Class Counsel would have been facing continued litigation against a well-defended Defendant which has indicated a willingness to aggressively pursue its

      defenses.

n. As the Court has found previously, Class Counsel are qualified to litigate class action claims and they have performed their duties skillfully.

o. Class Counsel have devoted in excess of $500,000 in professional time at their historical billing rates pursuing this case for Plaintiffs and the Class.

p. The Court finds that Class Counsel performed their tasks diligently, efficiently, and reasonably, that their billing rates are appropriate, and that the lodestar is reasonable.

q. The Court has conducted a lodestar "cross-check" with respect to the attorneys' fee award. Multiplying the number of hours reasonably expended here by Class Counsel by a reasonable hourly rate well-exceeds Class Counsel's requested percentage of the common fund request for attorney fees. The Court also finds that Class Counsel represented their clients with skill and diligence for over four (4) years on a contingent fee basis and obtained an excellent result for the class, taking into account the possible outcomes and risks of proceeding to trial.

**Incentive Award**. Class Counsel have also requested Incentive Awards for the one Class Representative in this action. Incentive Awards are "fairly typical" in class actions, *Rodriguez v. W. Pugl'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009), and serve to compensate named Plaintiffs for work done on behalf of the Class. The Defendant does not object to this award. The circumstances supporting the incentive award were discussed at length during the fairness hearing. The Court

finds that the one named plaintiff in this case was committed and did commit time on behalf of the Class and is deserving of an Incentive Award. The Plaintiff seeks an incentive award in the amount of $200,000. Given Lott's contributions to this suit, including having brought suit, participated in settlement discussion, and participation in discovery, the Court finds an incentive award appropriate here. However, the amount requested representing more than 13% of the total settlement amount is high. [*See* Fairness Hearing Transcript]. The Court must strive to avoid a result where the incentive award is a "bounty." *See In re S. Ohio Corr. Facility*, 24 F. App'x 520, 526 n. 2 (6th Cir. 2001). The Court weighs the competing interests and having considered the matter in detail finds an incentive award of $100,000, while at the higher end of the spectrum, is fair and reasonable for the efforts of the class representative. *See, e.g.*, *Hainey v. Parrott*, No.1:02-cv-733, 2007 WL 3308027 (S.D.Ohio 2007) (granting a $50,000 incentive award out of a $6 million settlement fund); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 252 (S.D. Ohio 1991) (granting $300,000 total incentive award (distributed evenly among six class representatives) out of $56.6 million fund); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373–74 (S.D. Ohio 1990) (approving incentive awards ranging from $35,000 to $55,000 out of a $18 million fund); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913–14 (S.D. Ohio 2001) (granting a $50,000 incentive award out of a $5.25 million fund); *Liberte Cap. Grp. v. Capwill*, No. 5:99 CV 818, 2007 WL 2492461, at *1 (N.D. Ohio Aug. 29, 2007) ("Incentive awards, where

appropriate, generally range from a few thousand dollars to $85,000").

15. **Class Payment**.  After payment of attorney fees and expenses, costs of settlement administration to Kroll, and the incentive payment, the remaining funds shall be paid pro rata to the verifiable claimants per vehicle involved by Kroll.  Defendant shall pay the Class in a pro rata plan of allocation, which the Court finds is cost effective, simple and fundamentally fair. The plan of allocation confers substantial benefits on the Class and the value is readily quantifiable.  In considering whether to approve an allocation plan, the Court applies the same standard used when considering approval of class action settlements.   Given the circumstances articulated in Class Counsel's Motion, with inconsistent billable records impeding the ability to calculate specific individual damages, the Court finds:

   a. The pro rata plan of allocation is cost effective, simple and fundamentally fair;

   b. The plan of allocation confers substantial benefits on the Class and the value is readily quantifiable;

   c. Payment from the Defendants to Kroll Settlement Administration ("Kroll") for their resolution of the claimant payments, tax requirements and on-going expenses associated with the payments to claimants is in the best interest of the Class and the Defendants shall provide payment to Kroll consistent with Kroll's total proposed cost estimate;

   d. Any remaining unclaimed funds after the pro rata distribution shall escheat to Simmons College and their criminal justice program as the cy pres

   recipient;

 e. The objection raised by Mr. Newberry is denied as moot as he shall be deemed a claimant entitled to part of the pro rata distribution described above;

 f. Any unverifiable claims received after the Fairness Hearing are deemed untimely and denied;

 g. Any unverified late claims received prior to the Fairness Hearing are denied; and

 h. Any verified late claims received prior to the Fairness Hearing are deemed valid and to be treated as verifiable claimants to be included in the pro rata distribution by Kroll.

16. **Dismissal of the Action**. This Action, including all individual and Class claims resolved in it, is dismissed on the merits and with prejudice against the Class Representatives and all other Class Members, without fees or costs to any party or non-party except as otherwise provided in this Order and the Final Judgment.

17. **Rule 58 Separate Judgment**. The Court will separately enter the accompanying Final Judgment in accordance with Fed. R. Civ. P. 58.

*[Signature]*
Rebecca Grady Jennings, District Judge
United States District Court
August 4, 2023

cc: Counsel of record